FILED

Jay L. Raftery, Jr. (SBN: 264114)
**LIVE EYEWEAR, INC.**
3490 Broad Street
San Luis Obispo, California 93401
Telephone: (805) 782-6438
Facsimile: (805) 782-5077
jraftery@liveeyewear.com
*Attorney for Plaintiff Live Eyewear, Inc.*

2012 APR 19 PM 3: 37

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

BY _____

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LIVE EYEWEAR, INC., a California corporation,<br><br>    Plaintiff,<br><br>vs.<br><br>JONATHAN PAUL EYEWEAR, INC., a Texas corporation; JONATHAN PAUL EYEWEAR LTD, LLP, a Texas limited liability partnership; JONATHAN PAUL EYEWEAR, LP, a Texas limited partnership; LAVA LIMITED COMPANY, a Hong Kong company; FITOVERS EYEWEAR USA PTY LTD, an Australian proprietary limited company; PAUL STABLES, a Texas resident; DOES 1 through 10, inclusive,<br><br>    Defendants. | CASE NO. CV12-3414 GAF (JCGx)<br><br>**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF FOR:**<br><br>**FEDERAL CLAIMS:**<br><br>(1) **TRADEMARK INFRINGEMENT;**<br><br>(2) **TRADEMARK DILUTION;**<br><br>(3) **UNFAIR COMPETITION;**<br><br>(4) **INDUCING INRINGEMENT OF TRADEMARK;**<br><br>**STATE CLAIMS:**<br><br>(5) **VIOLATION OF THE CALIFORNIA UNFAIR BUSINESS PRACTICES ACT**<br><br>**JURY TRIAL DEMANDED** |

    Plaintiff Live Eyewear, Inc. ("**Live Eyewear**") files this Complaint for Injunctive Relief and Damages against Jonathan Paul Eyewear, Inc., Jonathan Paul Eyewear LTD, LLP, Jonathan Paul Eyewear, LP, Lava Limited Company, Fitovers Eyewear USA, PTY LTD. and Paul Stables (collectively "**Defendants**") and in support alleges as follows:

1
COMPLAINT

## NATURE AND BASIS OF ACTION

1. This is an action for trademark infringement in violation of the Federal Lanham Act, 15 U.S.C. § 1114(1); dilution of a trademark in violation of the Federal Lanham Act, 15 U.S.C. § 1125, unfair competition in violation of the Federal Lanham Act, 15 U.S.C. § 1125(a)(1)(A) and (B); and for unfair and deceptive trade practices in violation of the California Unfair Business Practices Act, Cal. Bus. & Prof. Code § 17200. Plaintiff seeks permanent injunctive relief, compensatory, statutory, and punitive damages, and recovery of its reasonable costs and attorneys' fees.

## PARTIES

2. Plaintiff Live Eyewear is a California corporation with its principal place of business located at 3490 Broad Street, San Luis Obispo, California. Live Eyewear designs and sells optical products and is recognized as a world leader in the over-prescription eyewear market under the trademarks COCOONS® and OVERX®.

3. Upon information and belief, Jonathan Paul Eyewear, Inc. ("**JPE, Inc.**"), is a corporation organized and existing under the laws of the State of Texas with its principal place of business at 2600 McHale Court, Suite 175, Austin, TX 78758-4469.

4. Upon information and belief, Jonathan Paul Eyewear, LTD, LLP ("**JPE, LLP**"), is a limited liability partnership organized and existing under the laws of the State of Texas with its principal place of business at 2600 McHale Court, Suite 175, Austin, TX 78758-4469.

5. Upon information and belief, Jonathan Paul Eyewear, LP ("**JPE, LP**"), is a limited partnership organized and existing under the laws of the State of Texas with its principal place of business at 2600 McHale Court, Suite 175, Austin, TX 78758-4469.

6. Upon information and belief, Lava Limited Company ("**Lava Limited**"), is a company organized and existing under the laws of Hong Kong.

7. Upon information and belief, Fitovers Eyewear USA PTY LTD ("**Fitovers LTD**"), is a proprietary limited company organized and existing under the laws of Australia

with its United States principal place of business at 2600 McHale Court, Suite 175, Austin, TX 78758-4469.

8. Upon information and belief, Paul Stables ("**Stables**") is an individual residing at 7300 Fireoak Drive, Austin, TX 78759. Upon information and belief, Stables is the President, CEO and sole owner of JPE, Inc., JPE, LL, JPE, LP, Lava Limited and Fitovers LTD.

## JURISDICTION AND VENUE

9. The Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a) and 15 U.S.C. § 1121 because Live Eyewear's first cause of action arises under the trademark laws of the United States, 35 U.S.C. §§ 1 *et seq*. This Court also has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a). The parties are citizens of different states and the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs. This Court has supplemental jurisdiction over Live Eyewear's state law claims pursuant to 28 U.S.C. § 1367.

10. This Court has personal jurisdiction over Defendants JPE, Inc., JPE, LLP and Fitovers LTD because these defendants transact business in and have committed tortious acts in this District. This Court therefore has personal jurisdiction over Defendants JPE, Inc., JPE, LLP and Fitovers LTD consistent with California's long-arm statute, Cal. Civ. Proc. Code § 410.10, and the Due Process Clause of the United States Constitution.

11. Venue is proper in this federal district pursuant to 28 U.S.C. §§ 1391(b)-(c) and 1400(b) as Defendants have done and continue to do business in this judicial district, and have committed and continue to commit acts of trademark infringement in this judicial district, entitling Live Eyewear to relief as set forth.

## INTRADISTRICT ASSIGNMENT

12. Assignment to the Western Division is appropriate because the majority of claims and certain of the transactions, acts, practices and courses of business alleged below occurred within the Central District of California, including San Luis Obispo, California.

# FACTUAL ALLEGATIONS

13. Plaintiff Live Eyewear is in the business of designing and marketing sunglass products primarily in the highly specialized fit-over prescription eyewear market.

14. Since at least as early as 2001, and long prior to Defendants' acts complained of herein, Live Eyewear has owned and used US Federal Trademark No. 2,688,860 for OVERX® and design, in connection with its quality eyewear products and related goods including, but not limited to sunglasses, eyewear cases, eyewear cloths and lanyards. Much of Live Eyewear's OVERX® branded line of sunglasses and merchandise is marked with a logo that incorporates OVERX® with the following stylized incontestable trademark (the "**OVERX® Logo**"):



Live Eyewear's OVERX® Logo is prominently featured on nearly every Live Eyewear sunglass package, featured in the use and care guide that accompanies nearly every Live Eyewear product and is prominently featured on the inner-temple of Live Eyewear's flagship Cocoons® product.

15. In addition to Live Eyewear's OVERX® trademark as noted above, Live Eyewear also owns the following US trademarks that feature the OVERX Mark: U.S. Reg. No. 3,931,129 "OVERX", in International Class 009 for "Sunglasses"; U.S. Reg. No. 2,979,343, "WEAR OVERX," in International Class 009 for "Sunglasses"; U.S. Reg. No. 3,216,304, "OVERXCAST," in International Class 009 for "Sunglasses," and U.S. Reg. No. 3,539,909, "OVERX AUTHENTIC and design" for:



4
COMPLAINT

Attached as <u>Exhibit A</u> are true and correct copies of these trademark registrations. Collectively, all of Live Eyewear's trademarks that include OVERX® shall be referred to as the "**OVERX Marks**."

16. Live Eyewear sells its eyewear products and accessories world-wide in more than 20 countries. Live Eyewear employs an extensive network of independent sales representatives who are authorized to sell Live Eyewear's OVERX® branded merchandise to various independent optical customers and upscale retail outlets, including outdoor and fishing retailers such as Bass Pro Shops, Outdoor World and Cabela's. For purpose of clarification, independent optical customers include opticians, ophthalmologists and optometrists.

17. In 2011 alone, Live Eyewear sold hundreds of thousands of products featuring the OVERX Marks, many of which prominently featured the OVERX AUTHENTIC logo (noted above) on the inside of each temple as well as the OVERX® Logo on nearly every product's hangtag.

18. Live Eyewear has spent well over one million dollars promoting and marketing its goods depicting the OVERX Marks, and these goods have received an enormous amount of publicity in this country and throughout the world. Consequently, goods sold in connection with the OVERX Marks are recognized worldwide as being associated exclusively with Live Eyewear and its goodwill.

19. As a result of Live Eyewear's long-term and widespread use of the OVERX Marks in commerce, and the amount of favorable publicity surrounding Live Eyewear's OVERX® branded eyewear, the OVERX Marks have achieved a level of recognition such that its marks are famous mark in the United States and abroad and represent Live Eyewear as a company.

20. Live Eyewear's federal registrations for the OVERX Marks are valid and subsisting in law, were duly and legally issued, are prima facie evidence of the validity of the marks registered, and constitute constructive notice of the ownership of these marks by Live

Eyewear in accordance with Sections 7(b) and 22 of the Trademark Act of 1946, 15 U.S.C. §§ 1115(a), 1057(b) and 1072.

21. Live Eyewear's U.S. Reg. No. 2,688,860 for OVERX® for use in connection with sunglasses and U.S. Reg. No. 2,979,343 for the WEAR OVERX mark for use in connection with sunglasses have now become incontestable pursuant to Section 15 of the Trademark Act of 1946, 15 U.S.C. § 1065, and, pursuant to Section 33(b) of the Act, 15 U.S.C. 1115(b), these registrations are therefore conclusive evidence of Live Eyewear's exclusive right to use the OVERX Marks for sunglasses.

22. The OVERX Marks are now, and have continuously been, used in interstate commerce by Live Eyewear in marketing and promotion materials for Live Eyewear's products and the OVERX Marks have become, through widespread and favorable public acceptance and recognition, assets of substantial value to Live Eyewear as a symbol of Live Eyewear, its quality goods, and its goodwill. By virtue of its adoption and long-continuous use of the OVERX Marks, Live Eyewear is the sole owner of all right, title and interest in and to the OVERX Marks.

**Defendants' Wrongful Conduct**

23. Defendants sell sunglasses in the over-prescription eyewear market and are direct competitors of Live Eyewear. Defendants target and market to the same customer base as Live Eyewear, namely independent optical accounts and high-end sporting and outdoor retailers.

24. In or around July 2011, Live Eyewear learned that Defendants had advertised its sunglasses product in the August 2011 issue of 20/20 Magazine, a national optical publication, using a trademark nearly identical to one or more of Live Eyewear's OVERX Marks (Exhibit B).

25. On or around August 3, 2011, Live Eyewear sent a cease and desist letter to Defendants placing Defendants on notice of their infringement of Live Eyewear's OVERX Marks and demanding that Defendant cease all further uses of marks identical, or nearly identical to Live Eyewear's valid OVERX Marks.

26. On August 24, 2011, Defendants' counsel contacted Live Eyewear and described his clients' improper use as "editorial," and further asserted that his client "fully respects Live Eyewear's intellectual property rights and trademark portfolio."

27. However, on March 14, 2012, in advance of one of the largest international eyewear trade shows, Vision Expo East ("**Expo**"), held annually in New York City, Live Eyewear learned that Defendants again infringed Live Eyewear's trademarks when Defendants improperly placed marketing materials in the Expo's OFFICIAL SHOW DIRECTORY AND BUYER'S GUIDE, that directly infringe Live Eyewear's OVERX Marks.

28. Defendants' unauthorized and infringing use of the OVERX Marks was placed both in the printed OFFICIAL SHOW DIRECTORY AND BUYERS GUIDE as well as in the Expo's digital "online" version of the directory.

29. Immediately upon learning this, Live Eyewear again contacted Defendants' counsel and demanded that it immediately discontinue use of the term. Only after receiving Live Eyewear's demands did Defendants remove the infringing use from the digital "online" version of the directory.

30. Nevertheless, Defendants unauthorized and infringing use of Live Eyewear's OVERX Marks continued in the nearly 20,000 copies of the OFFICIAL SHOW DIRECTORY AND BUYER'S GUIDE that was provided to nearly every attendee of the Expo, many of whom are direct consumers of both Live Eyewear's and Defendants' products (Exhibit C).

31. Accordingly, Defendants, with full knowledge of Live Eyewear's OVERX Mark and after being placed on notice only six months prior, purposefully and intentionally sought to benefit on Live Eyewear's goodwill in the OVERX Marks.

32. Defendants are not authorized distributors of Live Eyewear's products and Live Eyewear has not authorized Defendants to use the OVERX Marks in any form or fashion.

33. Upon information and belief, Defendants adopted and are using marks identical to the OVERX Marks in connection with their sunglass product with full knowledge

of Live Eyewear and its exclusive rights to its OVERX Marks, and with full knowledge that they have no legal right to use the OVERX Marks to promote or sell their goods.

34. Upon information and belief, Defendants have copied the OVERX Marks with the sole purpose and intent of trading on the goodwill that Live Eyewear has developed in the OVERX Marks, and in a manner designed to mislead customers into believing that Defendants are affiliated or associated with, or endorsed or sponsored by, Live Eyewear.

## COUNT I
## TRADEMARK INFRINGMENT
### (15 U.S.C. §§ 1114-1117)

35. Live Eyewear incorporates by reference each and every allegation in the preceding paragraphs.

36. Live Eyewear owns federal trademark registrations for the OVERX Marks, which serve to identify to the public certain goods that are offered by Live Eyewear alone, and the goods offered in connection with those marks are regarded by the public as being offered by, sponsored by, approved by, authorized by, associated with or affiliated with Live Eyewear.

37. Defendants are direct competitors of Live Eyewear and have intentionally copied and used at least one of the OVERX Marks, without authorization, in commerce in connection with the sale, offering for sale, distribution, or advertising of goods, knowing the marks they have used are unauthorized and infringing, and in a manner that is likely to cause confusion, mistake, or deception as to the true source or sponsorship of Defendant's goods.

38. Defendants' conduct have enabled Defendants to earn profits to which Defendants are not in law, equity or good conscience entitled, and have unjustly enriched Defendants, all to Defendants' profit and to Live Eyewear's damage and detriment.

39. Defendants' conduct constitutes intentional trademark infringement in violation of Section 32(1) of the Trademark Act of 1946, 15 U.S.C. § 1114(1).

8
COMPLAINT

40. Live Eyewear is informed and believes, and on that basis alleges that Defendants' infringement of Live Eyewear's OVERX Marks has been and continues to be intentional, willful and without regard to Live Eyewear's trademark rights.

41. As a direct and proximate result of Defendants' conduct in violation of 15 U.S.C. § 1114(1), Live Eyewear has suffered actual and irreparable injury for which no adequate remedy exists at law.

42. Live Eyewear will suffer and is suffering irreparable harm from Defendants' infringement of Live Eyewear OVERX Marks insofar as Live Eyewear's invaluable goodwill is being eroded by Defendants' continuing infringement. Live Eyewear has no adequate remedy at law to compensate it for the loss of business reputation, customers, market position, confusion of potential customers and good will flowing from Defendants' infringing activities. Pursuant to 15 U.S.C. § 1116, Live Eyewear is entitled to an injunction against Defendants' continuing infringement of Live Eyewear's trademarks. Unless enjoined, Defendants will continue their infringing conduct.

43. Because Defendants' actions have been committed with intent to damage Live Eyewear and to confuse and deceive the public, Live Eyewear is entitled to treble its actual damages or Defendants' profits, whichever is greater, and to an award of costs and, this being an exceptional case, reasonable attorneys' fees pursuant to 15. U.S.C. § 1117(a) and 1117(b). Alternatively, Live Eyewear is entitled to the maximum statutory damages allowed under 15 U.S.C. § 1117(c). Live Eyewear will make its election at the appropriate time before final judgment.

## COUNT II
## TRADEMARK DILUTION
## (15 U.S.C. §§ 1125)

44. Live Eyewear incorporates by reference each and every allegation in the preceding paragraphs.

45. As a result of the duration and extent of use of the OVERX Marks, the duration and extent of the advertising and publicity of the OVERX Marks, the geographical extent of the distribution of the same, the superior quality of Live Eyewear's products and

services, and the degree of recognition of the OVERX Marks, the OVERX Marks have achieved an extensive degree of distinctiveness and is a famous trademark.

46. As a result of Defendants' use of the OVERX Marks, Defendants are diluting the distinctive quality of the OVERX Marks.

47. Live Eyewear will suffer irreparable harm should Defendants' illegal acts be allowed to continue to the great detriment of its reputation and goodwill. Defendants' acts will continue unless enjoined.

## COUNT III
## VIOLATION OF 15 U.S.C. § 1125(a)
**(Unfair Competition)**

48. Live Eyewear incorporates by reference each and every allegation in the preceding paragraphs.

49. Live Eyewear's OVERX Marks are well known among eye care professionals and, over its 10-year existence, have come to be associated exclusively with Live Eyewear and Live Eyewear products.

50. Live Eyewear's OVERX Marks have become distinctive of Live Eyewear's products and distinguishes Live Eyewear's product from those offered by others.

51. Live Eyewear directly competes with Defendants in the same commercial markets and for the same consumers.

52. Defendants' use of the OVERX Marks constitutes a false designation of origin, or a false representation. Further, it wrongfully and falsely designates Defendants' products as originating from or connected with Live Eyewear and constitutes utilizing false descriptions or representations in interstate commerce.

53. Defendants' conduct is likely to cause mistake, to deceive, and confuse members of the public who would be wrongfully led to believe that Defendants are associated with Live Eyewear, thereby depriving Live Eyewear of its valid trademark rights.

54. Live Eyewear is informed and believes that Defendants, in adopting the OVERX Marks, have acted willfully and with full knowledge of Live Eyewear's rights in the

OVERX Marks, and have used this false designation of origin and description in contravention of 15 U.S.C. § 1125(a).

55. Defendants' unauthorized use, sale and distribution of sunglasses using Live Eyewear's OVERX Marks is likely to cause confusion and deception of the public and lead consumers and potential consumers to erroneously associate Defendants' products with Live Eyewear and/or to erroneously believe that Defendants' products are being placed upon the market with the consent and authority of Live Eyewear, as a result of which the Defendants' continued of the OVERX Marks has caused and, unless restrained, will continue to cause serious and irreparable injury to Live Eyewear.

56. Live Eyewear is informed and believes, and on that basis alleges, that Defendants have gained profits by virtue of its infringement of the OVERX Marks.

57. Live Eyewear also has sustained damages as a direct and proximate result of Defendants' infringement of the OVERX Marks in an amount to be proven at trial.

58. Pursuant to 15 U.S.C. § 1116, Live Eyewear is entitled to an injunction against Defendants' continuing infringement of Live's IP. Unless enjoined, Defendants will continue their infringing conduct.

59. Because Defendants' actions have been committed with intent to damage Live Eyewear and to confuse and deceive the public, Live Eyewear is entitled to treble its actual damages or Defendants' profits, whichever is greater, and to an award of costs and, this being an exceptional case, reasonable attorneys' fees pursuant to 15 U.S.C. § 1117(a) and 1117(b). Alternatively, Live Eyewear is entitled to the maximum damages allowed under 15 U.S.C. § 1117(c). Live Eyewear will make its election at the appropriate time before final judgment.

## COUNT IV
## INDUCEMENT TO INFRINGE TRADEMARK

60. Live Eyewear incorporates by reference each and every allegation in the preceding paragraphs.

61. Upon information and belief, Stables is the sole owner, president and CEO of JPE, Inc, JPE, LLC and Fitovers LTD ("**Stables's Companies**").

62. Upon information and belief, Stables has direct control over the actions of Stables's Companies and Stables single-handedly directs the activities of his marketing, sales and operational teams.

63. Upon information and belief, Stable's Companies have sold and/or offered to sell and continues to sell and/or offer to sell products based on Stables and Stables's infringement of Live Eyewear's OVERX Marks.

64. Stables acted despite an objectively high likelihood that his actions in directing Stables's Companies constituted infringement of Live Eyewear's OVERX Marks and despite that Stables, through his attorney, was made well aware of Live Eyewear's ownership in the OVERX Marks. Accordingly, Stables actions, in inducing Stables's Companies to infringe Live Eyewear's OVERX Marks, is intentional, willful and deliberate, entitling Live Eyewear to damages.

65. Stables, by inducing the infringing activity, has harmed Live Eyewear and will continue to harm Live Eyewear, causing irreparable injury for which there is no adequate remedy at law unless enjoined by the Court.

66. Because Stables's actions have been committed with intent to damage Live Eyewear and to confuse and deceive the public, Live Eyewear is entitled to treble its actual damages or Stables's profits, whichever is greater, and to an award of costs and, this being an exceptional case, reasonable attorneys' fees pursuant to 15. U.S.C. §§ 1117(a) and 1117(b). Alternatively, Live Eyewear is entitled to the maximum statutory damages allowed under 15 U.S.C. § 1117(c). Live Eyewear will make its election at the appropriate time before final judgment.

### COUNT V
### UNFAIR COMPETITION
### (Cal. Bus. & Prof. Code § 17200)

67. Live Eyewear incorporates by reference each and every allegation in the preceding paragraphs.

68. This claim is against Defendants for unfair competition in violation of California Business & Professions Code, §§ 17200, 17203.

69. The OVERX Marks are wholly associated with Live Eyewear and its predecessors-in-interest due to their extensive marketing efforts, sales successes, and pervasive use thereof, and as such, Live Eyewear has developed valuable assets in the OVERX Marks and its sunglasses sold under the OVERX Marks. It is only fair and legitimate that Live Eyewear be able to continue its business without unfair, improper, unauthorized, and illegal interference by Defendants as alleged herein.

70. Defendants' intentional misuse of the OVERX Marks on sunglasses appears purposefully directed at undercutting Live Eyewear's legitimate business involving their sunglasses and constitutes unfair competition in violation of the California Business and Professions Code,§§ 17200 and 17203.

71. Live Eyewear alleges that Defendants' acts of unfair competition were intentionally and knowingly performed and directed toward perpetuating a business to compete unfairly with Live Eyewear and were done with a willful disregard for Live Eyewear's rights.

72. By reason of Defendants' acts of unfair competition, Live Eyewear has suffered and will continue to suffer irreparable injury unless and until this Court enters an order enjoining Defendants from any further acts of unfair competition. Defendants' continuing acts of unfair competition, unless enjoined, will cause irreparable damage to Live Eyewear. Live Eyewear will have no adequate remedy at law to compel Defendants to cease such acts, and Live Eyewear cannot determine its losses proximately caused by such acts of Defendants. Live Eyewear will also be forced to prosecute a multiplicity of actions, one action each time Defendant commits such an infringing act, and in each such action it will still be extremely difficult to ascertain the amount of compensation which will afford Live Eyewear adequate relief. Live Eyewear is therefore entitled to a preliminary injunction against Defendants and a permanent injunction enjoining Defendants' from further infringing conduct.

73. As a direct and proximate result of the aforesaid acts of unfair competition, Defendants have wrongfully taken Live Eyewear's profits and the benefit of their creativity and investment of time, energy and money. Defendants should therefore disgorge all profits from the sale of infringing products and further should be ordered to perform full restitution to Live Eyewear as a consequence of Defendants' infringing activities.

74. Live Eyewear is informed and believe that the use of the OVERX Marks by Defendant was willful and with full knowledge of the unauthorized usage thereof.

75. In committing the infringing acts as alleged, Defendants have acted fraudulently, oppressively, and maliciously, and will continue to so act unless enjoined.

## PRAYER FOR RELIEF

WHEREFORE, Live Eyewear prays for the following relief:

A. An order permanently enjoining Defendant, its officers, agents, servants, employees, attorneys, and all persons in active concert or participating with any of them, from:

    a. committing any further acts of trademark infringement;

    b. using any term that is likely to be confused with the OVERX Marks asserted herein;

    c. representing directly or indirectly in any form or manner whatsoever that any Defendants' product is associated with or approved by Live Eyewear when, in fact, it is not;

    d. passing-off or inducing or enabling others to sell or pass off any non-Live Eyewear product as an Live Eyewear product or as a product endorsed or approved by Live Eyewear; and

    e. committing any other act calculated to compete unfairly with Live Eyewear in any manner.

B. An order seizing and impounding all infringing products and all manufacturing supplies in Defendants' possession or control;

C. An order awarding to Live Eyewear damages in the amount that Live Eyewear has been harmed by Defendants' infringements and unfair business practices, in an amount Live Eyewear proves at trial;

D. An order for an accounting and disgorgement of Defendants' profits from its infringing and unfair business activity;

E. A finding that Defendants have willfully and deliberately committed acts of trademark infringement against Live Eyewear;

F. An order trebling such damages against Defendants;

G. An order for attorneys' fees and costs that Live Eyewear incurred in having to bring and sustain this action for the legal enforcement of its trademark and business rights against Defendants;

H. Such other and further equitable and legal relief as the Court may deem appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff Live Eyewear, Inc. hereby demands a trial by jury of all issues triable by jury pursuant to Federal Rule of Civil Procedure 38(b).

Dated: April 19, 2012

Respectfully submitted,

LIVE EYEWEAR, INC.

By: _____
Jay Laurence Raftery, Jr.
Attorney for Plaintiff
LIVE EYEWEAR, INC.